ALB:RMP
F. #2020R00561

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

IN THE MATTER OF AN APPLICATION
FOR A SEARCH WARRANT FOR THE
PERSON KNOWN AND DESCRIBED AS
KEVIN CRAWFORD, WITH UNITED
STATES MARSHALS REGISTER
NUMBER 92370-053

AFFIDAVIT IN SUPPORT OF
APPLICATION FOR
SEARCH WARRANT
(Fed. R. Crim. P. 41)

No. 21-MJ-683

- - - - - - - - - - - - - - - - - - X

EASTERN DISTRICT OF NEW YORK, SS:

GEORGE LANE, being first duly sworn, hereby deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such. Upon information and belief, there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 2113(a) and (d) (bank robbery and putting in jeopardy the life of a person by the use of a weapon during bank robbery) will be obtained by the taking, and preserving as evidence, of a buccal swab DNA sample from KEVIN CRAWFORD,[1] United States Marshals Register Number 92370-053.

---

[1] Some of the courts that have addressed the issue have found that obtaining DNA via saliva is subject to the protections of the Fourth Amendment. See United States v. Nicolosi, 885 F. Supp. 50, 51-56 (E.D.N.Y. 1995) (Glasser, J.); In re Shabazz, 200 F. Supp. 2d 578, 581-85 (D.S.C. 2002). But see United States v. Owens, 2006 WL 3725547, at *6-17 (W.D.N.Y. Dec. 15, 2006) (finding probable cause not necessary for a saliva sample for DNA from an inmate); In re Vickers, 38 F. Supp. 2d 159, 165-68 (D.N.H. 1998) (permitting saliva sample by grand jury subpoena).

The source of your deponent's information and the grounds for his belief are as follows:[2]

1. I am a Special Agent with the Federal Bureau of Investigation and have been since March 2018. As a Special Agent, I have been involved in the investigation of numerous cases involving homicides, kidnappings, bank robberies, and extortion. I am familiar with the facts and circumstances set forth below from, among other sources, my participation in the investigation; my review of the investigative file, including surveillance videos and the defendant's criminal history record; and from reports of other law enforcement officers involved in the investigation. Where I rely on statements made by others, such statements are set forth in sum and substance and in part unless otherwise indicated.

## PROBABLE CAUSE

**A.   The May 18, 2020 Bank Robbery**

2. On May 18, 2020, at some time between approximately 3:45 p.m. and 4:00 p.m., an individual whom I believe to be KEVIN CRAWFORD entered the Valley National Bank at 107-01 Liberty Avenue in Ozone Park, which is at the corner of Liberty Avenue and 107th Street in Queens.

3. According to the statements that the employees of the bank made to New York City Police Department ("NYPD") officers, which I have reviewed, this

---

[2] Because this affidavit is submitted for the limited purpose of establishing probable cause for a search warrant, I have not set forth each and every fact learned during the course of this investigation.

individual entered the bank, approached a teller, and handed the teller a manila envelope upon which was handwritten "Fill it up" and "20's 50's and 10's." The teller did not immediately comply. The robber brandished a large knife and verbally demanded, in sum and substance, that the teller "put the money in the envelope," and he placed the knife against the neck of one of the bank employees. The bank employees surrendered $2,330 cash and the perpetrator fled northbound on 107th Street.

4. I have reviewed videos recovered from surveillance cameras in the bank, which show the robbery, and videos recovered from cameras outside the bank and around the neighborhood, which show his subsequent flight. During the robbery, the perpetrator wore a black jacket with thick white stripes down the shoulders and arms, a red knit cap with white and black patterns, a black scarf or face mask, and light blue gloves that appear to be rubber or latex medical gloves. A surveillance camera on a residence on 107th Street only a short distance north of the bank captured video of the robber running northbound on 107th Street, holding the envelope in his left hand, and throwing an object, which appears to be the knife, with his right hand.

5. The NYPD recovered a knife from the front of the property where, in the video, it appears to have been thrown. A latent fingerprint on the knife handle, which was compared to fingerprints stored in a law enforcement database, was identified as a match for a fingerprint taken from the right ring finger of CRAWFORD.

6. Another camera farther north on 107th Street captured video of the perpetrator running while still wearing the hat, mask, and gloves that he wore during the bank robbery, and holding the envelope. Another camera still farther north captured video of

3

the perpetrator removing his hat, and another captured an identification-quality image of his face. Still another camera captured video of him removing his gloves. I have reviewed these videos and images of the perpetrator's face with an NYPD detective who has participated in CRAWFORD's arrest for prior robberies, and the detective positively identified the person in the video and photographs as CRAWFORD.

7. Another surveillance camera farther north on 107th Street captured video of CRAWFORD entering an alley between two homes. Approximately two and a half minutes later, that camera captured video of him exiting that alley wearing different clothes, and without the envelope. That alley leads to the backyard of a private residence, and during the approximately two and a half minutes between his entry and exit from the alley, CRAWFORD did not appear in video captured by a surveillance camera in that backyard, nor did anyone else enter or exit the alley from the other side.

8. The NYPD recovered from that alley the items that CRAWFORD abandoned, including the envelope with the demand written on it and the rubber or latex gloves. Two latent fingerprints on the exterior of the envelope, which were compared to fingerprints stored in a law enforcement database, were identified as matches for a fingerprint taken from the right thumb of CRAWFORD.

9. On June 24, 2020, based in substantial part on the above information, the Honorable United States Magistrate Judge Cheryl L. Pollak issued an arrest warrant for CRAWFORD, see 20-MJ-482, and CRAWFORD was arrested. A permanent order of pretrial detention was entered and CRAWFORD has been detained since that date at the Metropolitan Detention Center ("MDC") in Brooklyn, New York.

10. The day after his arrest, on June 25, 2020, a grand jury sitting in the Eastern District of New York returned an indictment charging CRAWFORD with one count of bank robbery and putting in jeopardy the life of a person by the use of a dangerous weapon during a bank robbery, in violation of 18 U.S.C. § 2113(a) and (d).  See United States v. Crawford, 20-CR-224 (PKC).

B. **The DNA Evidence**

11. The NYPD collected evidence swabs from the interior of the gloves that were recovered from the alley where CRAWFORD abandoned them after the May 18, 2020 robbery and submitted those swabs to the New York City Office of Chief Medical Examiner ("OCME") for laboratory analysis.  The laboratory report shows that a DNA profile was determined from the material on the swabs, and that profile matched the DNA profile that had been determined from swabs taken from similar gloves that were recovered near the scene of another bank robbery.

12. Specifically, on May 8, 2020, a person entered the New York Community Bank at 80-35 Jamaica Avenue in Woodhaven, Queens, and displayed a demand note to a bank employee.  The bank employee surrendered $1,830 and the perpetrator fled with the money.[3]  I have reviewed surveillance video recovered from cameras inside the bank and from the street outside the bank, and although the perpetrator's face is obscured by a medical mask, the portion of his face that is visible, as well as his general size and build and his distinctive gait, all resemble CRAWFORD.

---

[3] No weapon was used or displayed during this robbery.

13. The NYPD canvased the neighborhood in the direction toward which the perpetrator fled, and articles of clothing matching those that the perpetrator can be seen wearing in the surveillance videos, including blue rubber or latex gloves, were recovered from a driveway or alley between two houses approximately a block away from the bank.

14. The NYPD collected evidence swabs from the interior of the gloves that were recovered, and submitted those swabs to OCME, which determined the DNA profile.

15. In addition to the fact that the DNA profile determined from the gloves connected to the May 8, 2020 robbery matches the DNA profile determined from the gloves connected to the May 18, 2020 robbery, both profiles were entered into law enforcement DNA databases and both returned as matches to DNA profiles previously identified with CRAWFORD in connection with prior state convictions in New York and New Jersey.

16. I am seeking a buccal swab DNA sample from CRAWFORD for confirmatory analysis rather than relying solely on the database profiles that are based upon samples taken in connection with prior convictions, in order to make certain of the chain of custody and ensure the profile samples were correctly identified.

## **CONCLUSION**

17. Based on the above information, I submit that there is probable cause to believe that KEVIN CRAWFORD is the contributor of the DNA evidence associated with both bank robberies described above. Therefore, there is probable cause to believe that buccal swabs to collect a sample of CRAWFORD's DNA for confirmatory analysis would constitute evidence of his commission of these crimes.

18. WHEREFORE, your deponent requests that a search warrant be issued authorizing FBI Special Agents, United States Marshals and/or other appropriate law enforcement and support personnel to seize and obtain a buccal swab from CRAWFORD. An appropriately trained law enforcement officer, or an appropriately trained designee, will perform the cheek swabbing for a DNA sample. This method involves taking a sterile swab (similar to a Q-Tip) and gently scrubbing the inside of each cheek for approximately five to ten seconds. Two samples are requested in the event that one of the samples becomes contaminated or otherwise cannot be tested. The samples seized will be subsequently submitted to a forensic laboratory for examination and will be subject to examination, testing and analysis.

_____
GEORGE LANE
Special Agent
Federal Bureau of Investigation

Sworn to before me by telephone
this 10 day of June, 2021

/s/ Roanne L. Mann
_____
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

7